**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| FAMILY HEALTH CHIROPRACTIC, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons,<br><br>    Plaintiff,<br><br>v.<br><br>BANC CERTIFIED MERCHANT SERVICES, LLC and JOHN DOES 1-5,<br><br>    DEFENDANTS. | Case No. 5:16-cv-2433<br><br><br><br><br><br>**CLASS ACTION COMPLAINT** |

Pursuant to Rules 7 and 8 of the Federal Rules of Civil Procedure, Plaintiff Family Health Chiropractic, Inc. ("FHC") alleges the following against Defendants Banc Certified Merchant Services, LLC ("BCMS") and John Does 1-5:

**PRELIMINARY STATEMENT**

1. This case challenges BCMS' practice of sending unsolicited facsimiles.

2. The Telephone Consumer Protection Act ("TCPA"), which is codified at 47 U.S.C. 227, was passed in 1991. In 2005, the TCPA was amended and renamed the Junk Fax Prevention Act ("JFPA"). The JFPA, along with its implementing regulations, prohibit a person or entity from sending advertisements via facsimile without the prior express invitation or permission of the recipients. The JFPA allows private action to enforce this prohibition and provides statutory damages of $500 per violation. Upon information and belief, BCMS has sent advertisements to the fax machines/fax numbers of FHC and other persons in violation of the JFPA, including, but not limited to, an advertisement dated October 11, 2012 ("the 10/11 Fax Ad").

3. Unsolicited facsimile advertisements (or "junk faxes") damage the recipients in a number of ways. A junk fax uses the fax machine, paper, and ink/toner of the recipient. A junk fax wastes the recipient's time in having to review and sort through unwanted advertisements. A junk fax also interrupts the recipient's privacy. Junk faxes also prevent fax machines from receiving and sending authorized faxes, cause wear-and-tear on fax machines, and require labor to discern and attempt to stop such unwanted advertisements.

4. On behalf of itself and all others similarly situated, FHC brings this case as a class action against BCMS under the JFPA. FHC seeks to certify a class consisting of junk faxes sent to FHC and other persons without the required opt-out language and/or prior express invitation or permission, regardless of whether FHC received all such advertisements.

5. FHC is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the JFPA. This action seeks relief expressly authorized by the JFPA: (i) injunctive relief enjoining BCMS, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the JFPA.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227, as the JFPA is a federal statute and, therefore, gives rise to federal question jurisdiction.

7. This Court has personal jurisdiction over BCMS because BCMS transacted business within this judicial district, made contracts within this judicial district, and/or committed tortious acts within this judicial district.

8. This Court has venue under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

9. FHC is an Ohio corporation, and it operates a medical clinic located at 641 E. State Street in Alliance, Ohio 44601.

10. BCMS is an Ohio corporation, and its principal place of business is located at 5006 Cemetery Road in Hilliard, Ohio 43026.

11. BCMS provides credit card processing, check card processing, and other services primarily to small and medium-sized business.

12. John Does 1-5 assisted BCMS in its facsimile advertising activities by providing a list of fax numbers, transmitting the 10/11 Fax Ad, providing advice or assistance on the content of the 10/11 Fax Ad, *etc.* The identity of the John Doe defendants is not presently known but will be identified through discovery.

## FACTS

13. On October 11, 2012, BCMS transmitted by telephone facsimile machine an advertisement to FHC via FHC's office facsimile machine/fax number. A copy of the 10/11 Fax Ad is attached hereto as Exhibit A.

14. BCMS receive some or all of the revenues from the sale of the products, goods, and services advertised by the 10/11 Fax Ad. BCMS profits and benefits from the sale of the products, goods and services advertised by the 10/11 Fax Ad.

15. FHC had not invited or given permission to BCMS to send the 10/11 Fax Ad to its office facsimile machine/fax number.

16. On information and belief, BCMS faxed the same and other advertisements without the required opt-out language to FHC and more than twenty-five other recipients or sent the same and other advertisements by fax with the required opt-out language but without first receiving the recipients' express invitation or permission.

17. There is no reasonable means for FHC (or any other class member) to avoid receiving faxes as fax machines are left on and receive all communications transmitted to them.

18. The 10/11 Fax Ad did not display a proper opt-out notice as required by 47 C.F.R. § 64.1200.

## CLASS ACTION ALLEGATIONS

19. In accordance with Fed. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), FHC brings this class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of BCMS, and (3) from which BCMS did not have prior express invitation or permission, or (4) which did not display a proper opt-out notice.

This class of persons constitutes the putative class members. FHC may amend the class definition after discovery identifies potential class members, additional facsimile advertisements, and/or the specific contours of the class.

20. Numerosity: Advertisements are typically sent to hundreds if not thousands of persons. Based on information, belief, and the appearance of the 10/11 Fax Ad itself, the 10/11 Fax Ad was sent to more than forty persons via their respective fax machines/fax numbers. The joinder of such a large group of persons in a single lawsuit would be impracticable.

4

21. <u>Commonality</u>: Common questions of law and fact apply to the claims of the putative class members. These include the following:

    (a) Whether the 10/11 Fax Ad constitutes an "unsolicited advertisement" within the meaning of the JFPA;

    (b) How BCMS compiled or obtained the list of fax numbers to which the 10/11 Fax Ad was sent;

    (c) Whether BCMS violated the JFPA and the regulations promulgated thereunder with regard to the 10/11 Fax Ad; and

    (d) Whether BCMS sent the 10/11 Fax Ad intentionally, knowingly, or willfully.

22. <u>Typicality</u>: FHC's claims are typical of the claims of the putative class members. FHC is asserting the same claim under the same federal statute as the other members of the putative class. FHC is also seeking the same relief for itself and the other members of the putative class.

23. <u>Adequacy</u>: FHC will fairly and adequately represent the interests of the putative class members. FHC has no interests in conflict with the putative class members, has the resources and inclination to prosecute this action to completion, and has retained experienced counsel to assist it in doing so.

24. <u>Need for Consistent Standards and Practical Effect of Adjudication</u>: Class certification is appropriate because the prosecution of individual actions by class members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for BCMS, and/or (b) as a practical matter, adjudication of FHC's claims will be dispositive of the interests of class members who are not parties.

25. <u>Common Conduct</u>: Class certification is also appropriate because BCMS has acted in the same or similar manner with respect to all class members thereby making injunctive and declaratory relief appropriate. FHC demands such relief as authorized by 47 U.S.C. §227.

26. <u>Predominance</u>: The questions of law and fact common to the putative class members predominate over any questions affecting only individual members because:

    (a) FHC's claim involves the same facts and legal issues as that of the putative class members;

    (b) the evidence supporting BCMS's likely defenses will come solely from BCMS's own records and will not require any information or inquiries from individual class members;

    (c) the damages for all putative class members are set by statute and will, therefore, be the same for each and every member of the putative class; and

    (d) the identity of the putative class members can be readily ascertained from BCMS or its agents' computer records, phone records, or other business records.

27. <u>Superiority</u>: A class action would be superior to individual actions by the putative class members for the following reasons:

    (a) the damages suffered by any one class member are too low to justify a stand-alone lawsuit;

    (b) the JFPA contains no provision for awarding attorney fees. As such, individual claimants would, as a practical matter, have to proceed *pro se* against a large, sophisticated defendant;

    (c) many of the putative class members are legal entities that would not be permitted to proceed in court *pro se*; and

    (d) the evidence concerning each of the putative class member's claims is so similar that the adjudication of each on an individual basis would be repetitive, inefficient, and wasteful.

**CLAIM FOR RELIEF – VIOLATIONS OF THE JFPA**

6

28. Under the JFPA, it is "unlawful for any person to . . . use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. 227(b)(1)(C).

29. Under the JFPA, "the term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

30. **Opt-Out Notice Requirements.** The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the JFPA, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following (hereinafter collectively referred to as the "Opt-Out Notice Requirements"):

(a) A statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

(b) A statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

(c) A statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

(d) The opt-out language must be conspicuous.

The requirement of (a) above is incorporated from § (b)(D)(ii) of the JFPA. The

requirement of (b) above is incorporated from § (b)(D)(ii) of the JFPA and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005,* 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006).  The requirements of (c) above are contained in § (b)(2)(E) of the JFPA and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii).  Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of the telephone lines and fax machines giving them the right, and means, to stop unwanted faxed advertisements.

      31.    **2006 FCC Report and Order.** The JFPA, in § (b)(2) of the JFPA, directed the FCC to implement regulations regarding the JFPA, including the JFPA's Opt-Out Notice Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

    (a)    The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the JFPA and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the JFPA (*See* 2006 Report and Order ¶¶ 8-12 and 17-20);

    (b)    The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of the JFPA and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the JFPA (*See* 2006 Report and Order ¶¶ 13-16);

    (c)    The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third

    of the three prongs of the exemption under § (b)(1)(C)(iii) of the JFPA and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the JFPA (*See* 2006 Report and Order ¶¶ 24-34);

  (d) The failure of a sender to comply with the Opt-Out Notice Requirements precludes the sender from claiming that a recipient gave "prior express invitation or permission" to receive the sender's fax (*See* Report and Order ¶ 48).

As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an unsolicited advertisement under the JFPA. This is because such a sender can neither claim that the recipients of the 10/11 Fax Ad gave "prior express invitation or permission" to receive the 10/11 Fax Ad nor can the sender claim the exemption from liability contained in § (b)(C)(1) of the JFPA.

  32. **The 10/11 Fax Ad**. BCMS sent the advertisement on October 11, 2012, via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of FHC and the other members of the putative class. The 10/11 Fax Ad constituted an advertisement under the JFPA. BCMS failed to comply with the Opt-Out Requirements in connection with the 10/11 Fax Ad. The 10/11 Fax Ad was transmitted to persons or entities without their prior express invitation or permission and/or BCMS is precluded from asserting any prior express invitation or permission or that BCMS had an established business relationship with FHC and other members of the class, because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, BCMS violated the JFPA and the regulations promulgated thereunder by sending the 10/11 Fax Ad via facsimile transmission to FHC and members of the Class. FHC seeks to certify a class which includes this fax and all others sent during the four years prior to the filing of this case through the present.

  33. **BCMS' Other Violations.** FHC is informed and believes, and upon such

information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, BCMS has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Putative class other faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express invitation or permission (and/or that BCMS is precluded from asserting any prior express invitation or permission or that BCMS had an established business relationship because of the failure to comply with the Opt-Out Notice Requirements in connection with such transmissions).  By virtue thereof, BCMS violated the JFPA and the regulations promulgated thereunder.  FHC is informed and believes, and upon such information and belief avers, that BCMS may be continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

34. The JFPA provides a private right of action to bring this action on behalf of FHC and the Putative class to redress BCMS' violations of the JFPA, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The JFPA also provides that injunctive relief is appropriate. *Id.*

35. As the JFPA is a strict liability statute, BCMS is liable to FHC and the other class members even if their actions were only negligent.

36. BCMS knew or should have known that (a) FHC and the other class members had not given express invitation or permission for BCMS or anybody else to fax advertisements about BCMS' products, goods or services; (b) FHC and the other class members did not have an established business relationship; (c) BCMS transmitted advertisements; (d) The 10/11 Fax Ades did not contain the required Opt-Out Notice; and (e) BCMS' transmission of advertisements that

did not contain the required opt-out notice or were sent without prior express invitation or permission was unlawful.

37. BCMS' actions caused damages to FHC and the other class members. Receiving BCMS' junk faxes caused the recipients to lose paper and toner consumed in the printing of BCMS' faxes. Moreover, BCMS' faxes used FHC's and the other class members' telephone lines and fax machine. BCMS' faxes cost FHC and the other class members time, as FHC and the other class members and their employees wasted their time receiving, reviewing, and routing BCMS' unauthorized faxes. That time otherwise would have been spent on FHC's and the other class members' business activities. BCMS' faxes unlawfully interrupted FHC's and other class members' privacy interests in being left alone.

WHEREFORE, Plaintiff Family Health Chiropractic, Inc., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants Bank Certified Merchant Services, LLC and John Does 1-5 as follows:

(1) that the Court adjudge and decree that the present case may be properly maintained as a class action, appoint FHC as the representative of the class, and appoint FHC's counsel as counsel for the class;

(2) that the Court award actual or statutory damages to FHC and the other members of the class for each violation of the JFPA by BCMS;

(3) that the Court enjoin BCMS from additional violations of the JFPA; and

(4) that the Court award FHC pre-judgment interest, post-judgment interest, attorney fees, treble damages, costs, and such other relief as may be just and proper.

Respectfully submitted,

FAMILY HEALTH CHIROPRACTIC, INC.,
individually and as the representative of a class of
similarly-situated persons,

*/s/Matthew E. Stubbs*
GEORGE D. JONSON (0027124)
MATTHEW W. STUBBS (0066722)
MONTGOMERY, RENNIE & JONSON
36 E. Seventh Street, Suite 2100
Cincinnati, OH  45202
513-241-4722
513-241-8775 (fax)
Email: gjonson@mrjlaw.com
           mstubbs@mrjlaw.com